THE HONORABLE MARSHA J. PECHMAN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| IN RE COINSTAR INC. SHAREHOLDER DERIVATIVE LITIGATION<br><br>This Document Relates To:<br><br>THE DERIVATIVE LITIGATION | Master File No. 2:11-cv-00133 MJP<br><br>**MOTION TO DISMISS CONSOLIDATED VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT FOR FAILURE TO MAKE DEMAND**<br><br>NOTE ON MOTION CALENDAR: September 2, 2011<br><br>ORAL ARGUMENT REQUESTED |



WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

## TABLE OF CONTENTS


**Page**

INTRODUCTION ..... 1

BACKGROUND FACTS AND PROCEDURAL HISTORY ..... 3

SUMMARY OF ALLEGATIONS ..... 5

ARGUMENT ..... 6

I. APPLICABLE LEGAL STANDARDS ..... 6

- A. Fed. R. Civ. Proc. 23.1 and Delaware Demand Futility Law Govern ..... 6
- B. Delaware's Stringent Demand Futility Pleading Requirements ..... 7
- C. Coinstar's Exculpation Clause Raises Plaintiffs' Burden Even Higher ..... 8
- D. Demand Futility Should Be Assessed By Reference to the Six-Member Board In Place At the Time the Original Complaints Were Filed ..... 9

II. PLAINTIFFS FAIL TO PLEAD DEMAND FUTILITY WITH PARTICULARITY ..... 10

- A. Plaintiffs Do Not Raise a Reasonable Doubt that Half of the Six-Member Board Suffers From a Disabling Self-Interest ..... 10
  - 1. Plaintiffs' Reliance On the Securities Class Action Is Misplaced ..... 10
  - 2. Plaintiffs' Conclusory Allegations that the Directors Somehow Participated In, Knew or Should Have Known of Wrongdoing Do Not Establish a Substantial Likelihood of Liability ..... 11
  - 3. Audit Committee Membership Does Not Support a Substantial Likelihood of Liability for the Directors ..... 13
  - 4. Plaintiffs' Bare Allegations of Insider Stock Sales Do Not Establish a Disqualifying Self-Interest ..... 14
- B. Plaintiffs Fail to Plead a Sustained or Systematic Failure of Oversight ..... 16
- C. Plaintiffs' Scant Allegations of Business and Personal "Entanglements" Do Not Establish a Lack of Independence ..... 17
- D. Plaintiffs' Remaining Boilerplate Allegations Do Not Demonstrate Demand Futility ..... 19

III. PLAINTIFFS FAIL TO SATISFY THE OWNERSHIP REQUIREMENT UNDER RULE 23.1 ..... 21

CONCLUSION ..... 22





**WILSON SONSINI GOODRICH & ROSATI**
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Aronson v. Lewis*, 473 A.2d 805 (Del. 1984), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000) ........ *passim*

*Beam ex. rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 833 A.2d 961 (Del. Ch. 2003), *aff'd*, 845 A.2d 1040 (Del. 2004)........15

*Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040 (Del. 2004)........7, 10, 17, 18

*Blasband v. Rales*, 971 F.2d 1034 (3d Cir. 1992)........20

*Braddock v. Zimmerman*, 906 A.2d 776 (Del. 2006)........5, 9

*Brehm v. Eisner*, 746 A.2d 244 (Del. 2000) ........7

*Brophy v. Cities Serv. Co.*, 70 A.2d 5 (Del. Ch. 1949)........14

*Citron ex rel. United Techs. Corp. v. Daniell*, 796 F. Supp. 649 (D. Conn. 1992) ........12

*Desimone v. Barrows*, 924 A.2d 908 (Del. Ch. 2007)........7, 12

*Falkenberg v. Baldwin*, No. 76-cv-2409 (HFW), 1977 WL 1025 (S.D.N.Y. June 13, 1977)........11

*Ferre v. McGrath*, No. 06-cv-1684 CM, 2007 WL 1180650 (S.D.N.Y. Feb. 16, 2007) ........16

*Fink v. Komansky*, No. 03-cv-0388 (GBD), 2004 WL 2813166 (S.D.N.Y. Dec. 8, 2004) ........16

*Fink v. Weill*, No. 02-cv-10250, 2005 WL 2298224 (S.D.N.Y. Sept. 19, 2005)........18

*Goldberg v. Meridor*, 81 F.R.D. 105 (S.D.N.Y. 1979)........21

*Grimes v. Donald*, 673 A.2d 1207 (Del. 1996), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000) ........20

*Grobow v. Perot*, 539 A.2d 180 (Del. 1988), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000) ........19

*Guttman v. Huang*, 823 A.2d 492 (Del. Ch. 2003)........9, 15, 16, 17

*Haber v. Bell*, 465 A.2d 353 (Del. Ch. 1983) ........9

*Harris v. Carter*, 582 A.2d 222 (Del. Ch. 1990) ........10



**WILSON SONSINI GOODRICH & ROSATI**
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

*Highland Legacy Ltd. v. Singer*, No. 1566-N, 2006 WL 741939 (Del. Ch. Mar. 17, 2006) ....18

*In re Accuray, Inc. S'holder Deriv. Litig.*, 757 F. Supp. 2d 919 (N.D. Cal. 2010)....7, 13, 14, 21

*In re Adolor Corp. Deriv. Litig.*, No. 04-cv-3649, 2009 WL 1325738 (E.D. Pa. May 12, 2009) ....18

*In re Baxter Int'l, Inc. S'holders Litig.*, 654 A.2d 1268 (Del. Ch. 1995) ....8, 9

*In re Caremark Int'l, Inc. Deriv. Litig.*, 698 A.2d 959 (Del. Ch. 1996) ....16, 17

*In re Citigroup Inc. S'holder Deriv. Litig.*, 964 A.2d 106 (Del. Ch. 2009).... 12, 13, 14, 17

*In re Coca-Cola Enters., Inc. Deriv. Litig.*, 478 F. Supp. 2d 1369 (N.D. Ga. 2007), *aff'd*, 269 F. App'x 888 (11th Cir. 2008)....14

*In re Computer Sciences Corp. Deriv. Litig.*, No. 06-cv-05288, 2007 WL 1321715 (C.D. Cal. Mar. 26, 2007) ....18

*In re Cray Inc. Deriv. Litig.*, 431 F. Supp. 2d 1114 (W.D. Wash. 2006) ....11, 20

*In re Discovery Labs. Deriv. Litig.*, 242 F.R.D. 333 (E.D. Pa. 2007) ....18

*In re Forest Labs., Inc. Deriv. Litig.*, 450 F. Supp. 2d 379 (S.D.N.Y. 2006)....16

*In re Freeport-McMoran Sulphur, Inc., S'holders Litig.*, No. 16729, 2001 WL 50203 (Del. Ch. Jan. 11, 2001) ....20

*In re infoUSA, Inc. S'holders Litig.*, 953 A.2d 963 (Del. Ch. 2007) ....7, 12

*In re NutriSystem, Inc. Deriv. Litig.*, 666 F. Supp. 2d 501 (E.D. Pa. 2009) ....19

*In re Oracle Corp. Deriv. Litig.*, 867 A.2d 904 (Del. Ch. 2004), *aff'd*, 872 A.2d 960 (Del. 2005) ....16

*In re Sagent Tech., Inc. Deriv. Litig.*, 278 F. Supp. 2d 1079 (N.D. Cal. 2003)....14, 18, 19

*In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970 (9th Cir. 1999)....5, 7, 12

*In re United Telecomms., Inc. Sec. Litig.*, No. 90-cv-2251, 1993 WL 100202 (D. Kan. Mar. 4, 1993)....11

*In re Walt Disney Co. Deriv. Litig.*, 907 A.2d 693 (Del. Ch. 2005)....9

*Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90 (1991)....7

*Langner v. Brown*, 913 F. Supp. 260 (S.D.N.Y. 1996)....18

*Levner v. Saud*, 903 F. Supp. 452 (S.D.N.Y. 1994), *aff'd*, 61 F.3d 8 (2d Cir. 1995)....9

*Lewis v. Chiles*, 719 F.2d 1044 (9th Cir. 1983) ....21



**WILSON SONSINI GOODRICH & ROSATI**
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

*Lewis v. Graves*, 701 F.2d 245 (2d Cir. 1983) .......... 20

*Lewis v. Sporck*, 612 F. Supp. 1316 (N.D. Cal. 1985) .......... 20

*Louisiana Mun. Police Employees Ret. Sys. v. Blankfein*, No. 08-cv-7605 (LBS), 2009 WL 1422868 (S.D.N.Y. May 19, 2009) .......... 14

*McCall v. Scott*, 239 F.3d 808 (6th Cir. 2001) .......... 14, 15

*McGowan v. Ferro*, No. 18672-NC, 2002 WL 77712 (Del. Ch. Jan. 11, 2002) .......... 21

*Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Lundgren*, 579 F. Supp. 2d 520 (S.D.N.Y. 2008) .......... 13

*Potter v. Hughes*, 546 F.3d 1051 (9th Cir. 2008) .......... 5

*Rahbari v. Oros*, 732 F. Supp. 2d 367 (S.D.N.Y. 2010) .......... 9, 19

*Rales v. Blasband*, 634 A.2d 927 (Del. 1993) .......... *passim*

*Rattner v. Bidzos*, No. 19700, 2003 WL 22284323 (Del. Ch. Sept. 30, 2003) .......... 12, 15, 16

*Schwartzman v. McGavick*, No. C06-1080-P, 2007 WL 1174697 (W.D. Wash. Apr. 19, 2007) .......... 7

*Seminaris v. Landa*, 662 A.2d 1350 (Del. Ch. 1995) .......... 8

*Shaev v. Saper*, 320 F.3d 373 (3d Cir. 2003) .......... 10

*Spiegel v. Buntrock*, No. 8936, 1988 WL 124324 (Del. Ch. Nov. 17, 1988), *aff'd* 571 A.2d 767 (Del. 1990) .......... 19

*St. Clair Shores Gen. Employees Ret. Sys. v. Eibeler*, No. 06-cv-688, 2006 WL 2849783 (S.D.N.Y. Oct. 4, 2006) .......... 19

*Stepack v. Ross*, No. 7047, 1985 WL 21137 (Del. Ch. Sept. 5, 1985) .......... 16

*Stiegele ex rel. Viisage Tech., Inc. v. Bailey*, No. 05-10677-MLW, 2007 WL 4197496 (D. Mass. Aug. 23, 2007) .......... 17

*Uni-Marts v. Stein*, No. 14713, 1996 WL 466961 (Del. Ch. Aug. 12, 1996) .......... 10

*White v. Panic*, 793 A.2d 356 (Del. Ch. 2000), *aff'd*, 783 A.2d 543 (Del. 2001) .......... 19

*Wood v. Baum*, 953 A.2d 136 (Del. 2008) .......... 9, 14

## STATUTES

Del. Code Ann. tit. 8, § 102(b)(7) .......... 8



**WILSON SONSINI GOODRICH & ROSATI**
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

**RULES**

Fed. R. Civ. P. 23.1 .......... 5, 12, 21

**MISCELLANEOUS**

13 William Mead Fletcher, *Fletcher Cyclopedia of the Law of Corporations* § 6012 (2011) .......... 21





**WILSON SONSINI GOODRICH & ROSATI**
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

## INTRODUCTION

This is a shareholder derivative action purportedly brought by plaintiffs MARTA/ATU Local 732 Employees Retirement Plan ("MARTA/ATU Local 732") and Melvin J. Brenner (collectively, "plaintiffs") on behalf of nominal defendant Coinstar Inc. ("Coinstar" or the "Company") against a group of defendants comprised of six members of the Company's current Board of Directors, one former director, and three of its current officers (collectively, "defendants"). Filed in April 2011, this suit followed closely on the heels of securities class action complaints launched in early 2011 when Coinstar failed to achieve results that it had projected for the fourth quarter of 2010. Accordingly, plaintiffs' allegations are essentially based upon those made in the Consolidated Amended Complaint filed against Coinstar in the securities class action ("Class Complaint" or "CC").

Under Delaware law, which applies here, a company's board of directors is entrusted with the decision to file a lawsuit on behalf of that company. And courts consider a board's decision to either bring or refrain from bringing suit on a company's behalf under the highly deferential business judgment rule. The rule presumes that when deciding whether to pursue litigation or otherwise resolve potential claims, directors are disinterested and independent, will act in good faith, and will make an honest effort to take the action that is in the company's best interests. Thus, a plaintiff may not circumvent a board's authority by immediately filing a lawsuit in the company's name. Instead, before filing suit, a plaintiff must bring grievances to the board's attention and ask that the board take the requested action. The board is then entitled to exercise its business judgment in determining the best course of action and what is in the best interests of the corporation. The demand requirement is excused only in limited circumstances, and to have standing without first making a demand, a derivative plaintiff must satisfy an exacting standard: he must plead *particularized facts* establishing that at the time the plaintiff chooses to bypass making a demand and to go directly to court, there is a *reasonable doubt* that a *majority* of the directors can exercise their independent and disinterested business judgment in response to a demand. As it applies in this case, demand would only be excused as futile if



WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

particularized facts pled in the complaint establish that a majority of the Board at the time of the filing of this lawsuit faced either a "substantial likelihood of liability" or were not sufficiently independent from those against whom significant claims have been made.

This lawsuit does not fall within the narrow category of cases in which demand would have been futile. Plaintiffs' reasons why demand on Coinstar's Board would be futile fall far short of this standard. ¶¶ 90-100. (References to "¶" are to the numbered paragraphs of the Complaint.) Plaintiffs lean heavily on the Class Complaint, but ignore its myriad defects and the inherent difficulty of basing directors' substantial likelihood of liability – required to demonstrate why directors could not exercise their business judgment – on untested claims. Plaintiffs allege that Coinstar's directors participated in wrongdoing, but cannot begin to explain how. They posit that the directors "knew or should have known" of the "misconduct" alleged in the securities class action from their Board or Audit Committee positions and associated access to information, but they cannot point to a single document, piece of information, meeting or conversation that provided defendants (or should have provided them) with such knowledge.

Plaintiffs allege that the directors also suffer from a disabling self-interest in connection with this lawsuit because they engaged in insider trading, but do not even attempt to identify what alleged "material non-public information" each director knew at the time he executed the sale(s) in question, or how and when he learned that information. Rather, plaintiffs offer nothing more than a bare-bones chart of the dates and amounts of each individual's stock sales during the relevant time period, without providing any background or context into trading history or total holdings.

Plaintiffs allege that Coinstar's directors failed in their oversight responsibility to ensure adequate controls, thus permitting the wrongful disclosures alleged in the securities class action, but cannot provide a single example of any such inadequacy or how the directors purportedly knew of these inadequacies and nonetheless ignored them. Plaintiffs also allege that Coinstar's directors lack independence, but fail to put forth any business, professional, charitable or personal connection that supports the notion that any director is beholden to another, as required



WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

by Delaware law. Finally, in a laundry list of concerns designed to show demand futility, plaintiffs also incorrectly contend, contrary to numerous courts considering the issue, that demand is excused because the acts alleged are incapable of ratification, that the directors will not sue themselves, or that their desire to maintain their compensation associated with their directorships disqualifies them from considering a demand.

Because none of these reasons – either alone or in concert – establish demand futility, the Consolidated Verified Shareholder Derivative Complaint (the "Complaint") must be dismissed.

**BACKGROUND FACTS AND PROCEDURAL HISTORY**

***Coinstar's Business.*** Coinstar is a Delaware corporation headquartered in Bellevue, Washington. ¶ 29. Coinstar has two main lines of business – Coin and DVD services. Coin services consist of self-service coin-counting kiosks where consumers convert their coins into cash or gift cards. DVD services, the focus of this litigation, operate through the Company's wholly-owned subsidiary Redbox. ¶¶ 2, 3, 52. Redbox owns and operates over 30,000 self-service DVD kiosks that supply the functionality of a traditional video rental store while typically occupying an area smaller than ten square feet. ¶¶ 2, 29. Without a membership fee, consumers use these Redbox kiosks – installed in leading mass retailers, drug stores and restaurants including Walmart, Walgreens, and McDonald's – to select and rent DVDs for $1 per night by using a touch screen and swiping a valid credit or debit card. ¶ 5.

***Coinstar's Board of Directors***. At the time of filing the original derivative complaints on April 18, 2011, Coinstar's Board of Directors had *six* members: Arik A. Ahitov, Deborah L. Bevier, David M. Eskenazy, Paul D. Davis, Robert Sznewajs, and Ronald B. Woodard (the "directors"). ¶¶ 30-36. Save for Mr. Davis, all of the directors are "outside directors" without day-to-day management roles at Coinstar or any of its subsidiaries.

The directors are all business leaders who have diligently led Coinstar and other institutions during their careers, including as directors of other public companies, Chief Financial Officer of another public company, and President of The Boeing Commercial Airplane Group:



WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

**Arik A. Ahitov.** Mr. Ahitov has been a Coinstar director from May 2008 to the present. In October 2010, Mr. Ahitov joined First Pacific Advisors as a vice president and research analyst for the FPA Capital Fund. He was a vice president and portfolio manager of Shamrock Capital Advisors, Inc. from September 2004 to May 2010.

**Deborah L. Bevier.** Ms. Bevier has been a director of Coinstar since August 2002 and has been the Board's non-employee Chair since October 2008. Ms. Bevier has been a principal of DL Bevier Consulting LLC since May 2004. Ms. Bevier also served as the president of Waldron Consulting from July 2004 to April 2006. Before that, Ms. Bevier had leadership positions at several other companies. She also currently serves on the board of F5 Networks.

**Paul D. Davis.** Mr. Davis has been Coinstar's Chief Executive Officer and a director since April 1, 2009. From February 2007 to March 2008, Mr. Davis was an independent consultant working with various consumer packaged goods and retail companies. From March 1999 to January 2007, Mr. Davis served in various executive positions at Starbucks Corporation, and he was also the global chief executive of Kettle Foods, Inc.

**David M. Eskenazy.** Mr. Eskenazy has been a Coinstar director since August 2000. He has been the Chief Financial Officer for Aegis Senior Communities since August 2009. From October 2008 through March 2010, he was a principal at Esky Advisors LLC, and before that, he served in several executive and board positions at other companies.

**Robert Sznewajs.** Mr. Sznewajs has been a Coinstar Board member since August 2002. He has served as president, chief executive officer, and a member of the board of directors of West Coast Bancorp since January 2000. He was also a member of the board of directors of the Portland Branch of the Federal Reserve Bank of San Francisco from January 2004 to December 2009.

**Ronald B. Woodard.** Mr. Woodard has been a Coinstar director since August 2001. He is the chairperson of MagnaDrive Corporation, a company he co-founded in April 1999 after a 32-year career with The Boeing Company, where he held numerous positions, including president of The Boeing Commercial Airplane Group. Mr. Woodard is currently a director of AAR Corp., and he also previously served as a director of Continental Airlines, Inc.

*See* Ex. A at 7-9, Coinstar Proxy filed with the Securities and Exchange Commission on April 25, 2011. (All exhibits ("Ex. _") are attached to the Declaration of Emily S. Schlesinger, and discussed in the Request for Judicial Notice.)

***Non-Director Defendants.*** Plaintiffs name Daniel W. O'Connor, a former Coinstar director, as a defendant. Mr. O'Connor resigned from Coinstar's board in March 2011, and, thus, was not a director at the time these lawsuits were filed. ¶ 35. Plaintiffs also name as defendants the following Coinstar executives: J. Scott Di Valerio (Coinstar's Chief Financial

Officer), Gregg A. Kaplan (Coinstar's President and Chief Operating Officer), and Galen Smith (Coinstar's Corporate Vice President and Treasurer during the relevant period). ¶¶ 37-39.

***Procedural History.*** On January 24, 2011, the first of several securities class action complaints was filed in federal court. (Dkt #1.) On April 18, 2011, piggybacking off of the allegations in the class complaints, plaintiffs filed their shareholder derivative complaints in federal court. *See MARTA/ATU Local 732 Employees Ret. Plan v. Ahitov, et al.*, No. 2:11-cv-00663 and *Brenner v. Bevier, et al.*, No. 2:11-cv-00655. On June 17, 2011, the Class Complaint was filed. (Dkt #76.) On July 15, 2011, again piggybacking off of the Class Complaint's allegations, plaintiffs filed their consolidated amended derivative Complaint. (Dkt #86.)

## SUMMARY OF ALLEGATIONS

***Claims Against Directors.*** Plaintiffs assert four claims against defendants: breach of fiduciary duty; abuse of control; gross mismanagement; and unjust enrichment. ¶¶ 101-116. The Complaint's allegations borrow heavily from allegations made in the Class Complaint. In this case, as in the securities class action, plaintiffs contend that Coinstar's October 28, 2010 revenue and earnings forecasts for Q4 2010, fiscal year 2010 and fiscal year 2011 were unachievable when issued. *Compare* ¶ 15 to CC ¶¶ 19-20; ¶ 66 to CC ¶¶ 88-89, 122-123; ¶ 67 to CC ¶¶ 90, 127-129. As in the securities class action, plaintiffs allege that defendants misled investors about the demand and revenue impact of agreements with Universal, Fox, and Warner requiring a 28-day delay new release window. *Compare* ¶¶ 10, 12-14, 16, 70 to CC ¶¶ 14, 17, 18, 92, 126(c). As in the securities class action, plaintiffs allege that the truth was revealed on January 13 and February 3, 2011 when Coinstar disclosed that it had missed its Q4 2010 and fiscal year 2010 forecasts. *Compare* ¶¶ 77-81 to CC ¶¶ 155-166. The weakness of the underlying allegations is demonstrated by defendants' motion to dismiss the securities class action complaint. (Dkt #83.)

With the exception of Mr. Davis, Coinstar's Chief Executive Officer, Coinstar's directors are *not* defendants in the securities class action. Nonetheless, plaintiffs allege in conclusory fashion that these directors face a substantial likelihood of liability because they somehow "knew

or should have known that Coinstar's business was not performing nearly as well" as publicly stated. ¶ 41. Plaintiffs allege that these directors "caused" the challenged statements to be made or were "involved" or "participated" in their issuance, while providing *nothing* that would demonstrate any connection of any of the directors, other than Mr. Davis, to those statements. ¶¶ 15, 42, 91. In addition, plaintiffs claim that these directors not only participated in the misconduct alleged, but also "exercise[d] control" over or "approved" of that conduct. ¶¶ 44, 91. Aside from listing what a director's duties are at a high level of abstraction, plaintiffs provide no facts establishing that such control or supervision occurred here. ¶¶ 46, 48, 98.

## ARGUMENT

### I. APPLICABLE LEGAL STANDARDS

#### A. Fed. R. Civ. P. 23.1 and Delaware Demand Futility Law Govern

Rule 23.1 of the Federal Rules of Civil Procedure requires derivative complaints to state "with particularity" the "efforts made by the plaintiff to obtain the desired action" (demand) or the "reasons" for "not making the effort" (demand futility). Fed. R. Civ. P. 23.1(b)(3). Since plaintiffs did not make a pre-suit demand on Coinstar's Board (¶ 89), the only inquiry here is whether their failure to do so is excused because it would have been futile.

The law of the state of incorporation controls and establishes "the circumstances under which demand would be futile." *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 989-90 (9th Cir. 1999) ("*SGI*"); *see also Potter v. Hughes*, 546 F.3d 1051, 1055 (9th Cir. 2008) (a "derivative plaintiff can initiate a derivative action only if he or she makes an adequate demand on the Board under applicable state law"). This is so because the demand and demand futility requirements constitute a "substantive right designed to give a corporation the opportunity to rectify an alleged wrong without litigation, and to control any litigation which does arise." *Braddock v. Zimmerman*, 906 A.2d 776, 784 (Del. 2006) (citations omitted). Indeed, this follows from the "cardinal precept" that "directors, rather than shareholders, manage the business and affairs of the corporation." *Aronson v. Lewis*, 473 A.2d 805, 811 (Del. 1984), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000). Since Coinstar is a Delaware

corporation (¶ 29), Delaware law governs the demand futility analysis. *See Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 108-09 (1991); *In re Accuray, Inc. S'holder Deriv. Litig.*, 757 F. Supp. 2d 919, 926 n.3 (N.D. Cal. 2010); *Schwartzman v. McGavick*, No. C06-1080-P, 2007 WL 1174697, at *4 (W.D. Wash. Apr. 19, 2007).

**B. Delaware's Stringent Demand Futility Pleading Requirements**

Delaware law imposes "stringent requirements of factual particularity" on plaintiffs who seek to excuse the failure to make a demand. *Brehm*, 746 A.2d at 254-55; *see SGI*, 183 F.3d at 989-90 (plaintiff must "plead with particularity the reasons why such demand would have been futile"). Conclusory statements are not considered "expressly pleaded facts," and "inferences that are not objectively reasonable" cannot be drawn in plaintiffs' favor. *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1048 (Del. 2004) (citations omitted). Plaintiffs cannot simply make allegations against a board or committee, but rather, must plead particularized facts showing a disabling interest "specific to each director." *Desimone v. Barrows*, 924 A.2d 908, 943 (Del. Ch. 2007); *see also In re infoUSA, Inc. S'holders Litig.*, 953 A.2d 963, 985 (Del. Ch. 2007) (determination of director "interestedness" requires a "detailed, fact-intensive, director-by-director analysis").

There are two tests to determine whether demand is excused. If plaintiffs challenge a specific board decision, under *Aronson v. Lewis*, demand is excused only if the plaintiffs plead particularized facts creating a reasonable doubt that (1) a majority of the directors is disinterested and independent, or (2) the transaction was the product of a valid exercise of business judgment. 473 A.2d at 814. Where, as here, the Complaint does not challenge a specific board decision, the second part of *Aronson* drops out, and the test becomes whether plaintiffs have pleaded particularized facts that "create a reasonable doubt that . . . the board . . . could have properly exercised its independent and disinterested business judgment in responding to a demand." *Rales v. Blasband*, 634 A.2d 927, 934 (Del. 1993).

To plead a disqualifying interest in the present context, plaintiffs must offer particularized facts showing that a particular director has engaged in "such egregious conduct"



WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

that the director "face[s] a substantial likelihood of liability." *Seminaris v. Landa*, 662 A.2d 1350, 1355 (Del. Ch. 1995). The "mere threat" of liability, however, is insufficient. *Aronson*, 473 A.2d at 815.

To plead a lack of independence, plaintiffs must "show that the directors are 'beholden' to the [other directors] or so under their influence that their discretion would be sterilized." *Rales*, 634 A.2d at 936.

**C. Coinstar's Exculpation Clause Raises Plaintiffs' Burden Even Higher**

Plaintiffs' already steep pleading burden of showing that a majority of directors at the time of the filing of the action face a "substantial likelihood of liability" is further heightened by Coinstar's exculpation clause—a clause in the Company's Articles of Incorporation waiving certain claims by Coinstar for money damages against Coinstar's directors. The relevant provision states that:

> [a] director of the Corporation shall not be personally liable to the Corporation or its stockholders for monetary damages for any breach of fiduciary duty of a director, except for liability (i) for any breach of the director's duty of loyalty to the Corporation or its stockholders; (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law (iii) under Section 174 of the Delaware General Corporation Law, or (iv) for any transaction from which the director derived an improper personal benefit.

Ex. B (Coinstar Restated Certificate of Incorporation § VI.A (Oct. 26, 2010)); *see In re Baxter Int'l, Inc. S'holders Litig.*, 654 A.2d 1268, 1270 (Del. Ch. 1995) (under Delaware law, a "court may take judicial notice of the certificate in deciding the motion to dismiss.").

Coinstar's exculpation clause was enacted under Del. Code Ann. tit. 8, § 102(b)(7), which provides that a Delaware corporation may "eliminate[e]" or "limit[] the personal liability of a director to the corporation or its stockholders for monetary damages for breach of fiduciary duty." Shareholders routinely adopt provisions waiving liability against directors "to encourage directors to undertake risky, but potentially value-maximizing, business strategies" without causing them to worry about "a *post hoc* judicial evaluation of the directors' actions." *In re Walt Disney Co. Deriv. Litig.*, 907 A.2d 693, 752 (Del. Ch. 2005).



WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

Because shareholders who seek to sue on behalf of a corporation in a derivative suit step into the corporation's shoes, they are bound by and subject to this waiver. And since Coinstar chose to provide its directors and officers with this protection, "a serious threat of liability may only be found to exist if the plaintiff pleads a *non-exculpated* claim against the directors based on particularized facts." *Guttman v. Huang*, 823 A.2d 492, 501 (Del. Ch. 2003); *see also Baxter*, 654 A.2d at 1270 ("When the certificate of incorporation exempts directors from liability, the risk of liability does not disable them from considering a demand fairly unless particularized pleading permits the court to conclude that there is a substantial likelihood that their conduct falls outside the exemption.").

Under the foregoing legal framework, therefore, plaintiffs may only demonstrate a substantial likelihood of a director's liability by pleading particularized facts, which, if proven, would "show that a majority of the [directors] knowingly engaged in [wrongful] conduct." *Wood v. Baum*, 953 A.2d 136, 141 (Del. 2008); *see also Rahbari v. Oros*, 732 F. Supp. 2d 367, 378-79 (S.D.N.Y. 2010) (with an exculpation clause, in order to demonstrate a substantial likelihood of liability, "plaintiff must allege with particularity that defendants failed to act in good faith or otherwise breached their duty of loyalty"). This pleading burden is "more onerous than that required to withstand a Rule 12(b)(6) motion to dismiss." *Levner v. Saud*, 903 F. Supp. 452, 456 (S.D.N.Y. 1994), *aff'd*, 61 F.3d 8 (2d Cir. 1995). And if a derivative plaintiff fails to meet this burden, the complaint must be dismissed even if the claim appears to be otherwise meritorious, *Haber v. Bell*, 465 A.2d 353, 357 (Del. Ch. 1983).

### D. Demand Futility Should Be Assessed By Reference to the Six-Member Board In Place At the Time the Original Complaints Were Filed

"[F]utility is gauged by the circumstances existing at the commencement of a derivative suit." *Aronson*, 473 A.2d at 810; *see also Braddock*, 906 A.2d at 785 ("[D]emand is excused only where particularized factual allegations create a reasonable doubt that, as of the time the complaint was filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand."); *Rales*, 634 A.2d at 934 (citing



WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

*Harris v. Carter*, 582 A.2d 222, 231 (Del. Ch. 1990) (measuring demand futility "as of the time the complaint is filed")); *see also Uni-Marts v. Stein*, No. 14713, 1996 WL 466961, at *12 (Del. Ch. Aug. 12, 1996) (determining demand futility by reference to the board composition as of the filing of the original complaint).

When MARTA/ATU Local 732 and Brenner filed their original complaints on April 18, 2011, Coinstar's Board had six members. ¶¶ 30-36. Plaintiffs, therefore, must plead particularized facts showing that at least three of these directors are not sufficiently disinterested and independent to have properly considered a pre-suit demand. *See Stewart*, 845 A.2d at 1046 n.8 (with a six-member board, demand is excused if at least three directors lack independence); *Shaev v. Saper*, 320 F.3d 373, 378 (3d Cir. 2003) (under Delaware law, plaintiff must allege demand futility for half of an even-numbered board). Plaintiffs fail to make the requisite showing for a single director, let alone the three necessary to plead demand futility.

## II. PLAINTIFFS FAIL TO PLEAD DEMAND FUTILITY WITH PARTICULARITY

### A. Plaintiffs Do Not Raise a Reasonable Doubt that at Least Half of the Six-Member Board Suffers From a Disabling Self-Interest

Plaintiffs allege that the directors are not disinterested because they face a substantial likelihood of liability, offering a catalog of conclusory and generic allegations bereft of *particularized facts*. None of these allegations suffices.

#### 1. Plaintiffs' Reliance On the Securities Class Action Is Misplaced

Plaintiffs repeat the allegations in the Class Complaint, including those of misrepresentations concerning the impact of the 28-day delay and knowingly false forecasts, and they even go so far as to quote from and directly reference the Class Complaint. ¶¶ 17, 70, 76; *see supra* at 5-6. Plaintiffs argue that Coinstar has been damaged because it is now "exposed" to "significant liability for violating the federal securities laws as well as costly and expensive-to-defend securities class action lawsuits." ¶¶ 21, 83, 86, 95. It is well settled, however, that legal fees and other costs associated with investigating and defending a lawsuit do not constitute actionable harm to a corporation. Equally insufficient is the allegation that the Company might


WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

someday have to pay damages. *See In re Cray Inc. Deriv. Litig.*, 431 F. Supp. 2d 1114, 1134 (W.D. Wash. 2006) ("[D]erivative claims are foreclosed when they merely allege damages based on the potential costs of investigating, defending, or satisfying a judgment or settlement for what might be unlawful conduct."); *Falkenberg v. Baldwin*, No. 76-cv-2409 (HFW), 1977 WL 1025, at *4 (S.D.N.Y. June 13, 1977) (same).

Ignoring the fact that only one Coinstar director (Mr. Davis) is a defendant in the securities class action or is alleged even to have made any misrepresentations, plaintiffs argue that the directors somehow face a substantial likelihood of liability in that lawsuit, and, therefore, are "hopelessly conflicted" because these lawsuits "would likely further expose [them] to liability under the federal securities laws." ¶ 94. Plaintiffs are putting the cart before the horse. The allegations of the Class Complaint are still completely untested, and the truth of those allegations is far from being established. Coinstar's motion to dismiss in the securities class action identifies numerous inherent weaknesses in that complaint, *e.g.*, Safe Harbor protection, no falsity, no scienter, that cannot be cured by amendment. (Dkt. #83). It is illogical to ask this Court to find a "substantial likelihood of liability" where the underlying allegations – which themselves warrant dismissal – have not even begun to be evaluated. Courts "do not decide cases based upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all."' *In re United Telecomms., Inc. Sec. Litig.*, No. 90-cv-2251, 1993 WL 100202, at *3 (D. Kan. Mar. 4, 1993) (citation omitted). Further, even if the class action is not dismissed at the pleading stage, it is a stretch to allege that directors face a "substantial likelihood of liability" for being responsible in an oversight sense for alleged misrepresentations, which have not been shown to actually be false.

### 2. Plaintiffs' Conclusory Allegations that the Directors Somehow Participated In, Knew or Should Have Known of Wrongdoing Do Not Establish a Substantial Likelihood of Liability

It is difficult to imagine a Complaint with less detail. Without *any* specificity, plaintiffs allege that the directors "caused," "participated" in, "approved," "permitted," or "exercise[d] control over the wrongful acts" alleged in the Complaint. ¶¶ 41, 42, 44, 91. How did the

directors do this? Plaintiffs do not say. They also make no effort to plead participation on a "director-by-director" basis. *infoUSA*, 953 A.2d at 985; *Desimone*, 924 A.2d at 943. The most particularity plaintiffs allege in the Complaint is that the directors were somehow "involved in the drafting, producing, reviewing and/or disseminating the false and misleading statements." ¶ 42. Such allegations are grossly inadequate:

> Pleading that the director defendants . . . "caused or allowed" the Company to issue certain statements is not sufficient particularized pleading to excuse demand under Rule 23.1. It is unclear from such allegations how the board was actually involved in creating or approving the statements, factual details that are *crucial* to determining whether demand . . . would have been excused as futile.

*In re Citigroup Inc. S'holder Deriv. Litig.*, 964 A.2d 106, 133 n.88 (Del. Ch. 2009) (emphasis added); *see also SGI*, 183 F.3d at 990 (allegations that defendants "participated" in the alleged misconduct without providing "particular facts connecting the director defendants to the challenged statements" were insufficient); *Citron ex rel. United Techs. Corp. v. Daniell*, 796 F. Supp. 649, 653 (D. Conn. 1992) (Delaware law requires dismissal of any claims against directors that "are stated conclusorily, without specification of particular personal acts or conduct to sustain the asserted conclusions").

In equally scant fashion, plaintiffs allege that the directors "knew or should have known" of the wrongdoing "because of their positions of control and authority as directors." ¶¶ 41, 43, 44. This allegation also is insufficient. *Rattner v. Bidzos*, No. 19700, 2003 WL 22284323, at *10 n.53 (Del. Ch. Sept. 30, 2003). Plaintiffs contend that these positions provided them with "access to Coinstar's internal information" and "corporate documents," but do not point to a single such document type, let alone a particular document, its contents, or how it informed them of the purported misconduct. ¶¶ 41, 43, 91. Plaintiffs absurdly allege, with no support, that the directors received "daily results for every Redbox kiosk." ¶ 16. Plaintiffs also allege that the directors learned of the wrongdoing from their "attendance at management and/or Board of Directors' meetings," but do not identify a single meeting, who attended, or what was communicated. ¶¶ 43, 91. Again, this is deficient. *Accuray*, 757 F. Supp. 2d at 928 (demand futility allegations dismissed because plaintiffs failed to allege that any specific "internal



WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

company metrics or information discussed at the Board level contradicted any of Defendants' statements").

In short, it is impossible to find demand futility based on a "substantial likelihood" of liability when plaintiffs provide no facts indicating exactly *what* any of these defendants knew or believed about Coinstar's Q4 2010 financial performance or the impact of the 28-day new release delay with certain studios, *when* and *how* they acquired this purported information, or anything else suggesting that they knowingly drafted or approved false or misleading statements. Such information is essential to "establish a threat of director liability" in this context. *Citigroup*, 964 A.2d at 134-35 ("[P]laintiffs must plead facts that show that the violation was made knowingly or in bad faith, a showing that requires allegations regarding what the directors knew and when.").

### 3. Audit Committee Membership Does Not Support a Substantial Likelihood of Liability for the Directors

Plaintiffs attempt to establish demand futility by alleging that outside directors Ahitov, Bevier, Eskenazy, and Sznewajs face a substantial likelihood of liability by virtue of their membership on Coinstar's Audit Committee. ¶¶ 48-49, 98. Instead of alleging particularized facts, however, plaintiffs assert that, "[a]s members of the Audit Committee," these directors "were and are responsible" for "reviewing" the "adequacy of Coinstar's internal controls," the "integrity" of its "financial statements," and the Company's "earnings press releases and guidance." ¶ 98. These conclusory allegations are insufficient. As stated in *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Lundgren*:

> The Complaint does allege that the members of the Audit Committee were responsible for "reviewing and discussing ... the Company's earnings press releases, ... financial information and earnings guidance ... and ... disclosure and internal controls," and "participated in the wrongdoing" by preparing and/or failing to correct the allegedly false statements at issue. However, these general allegations, based simply on the fact that a defendant was a member of a board or committee, without more, are insufficient as a matter of law.

579 F. Supp. 2d 520, 532 (S.D.N.Y. 2008) (citation omitted); *see also In re Coca-Cola Enters., Inc. Deriv. Litig.*, 478 F. Supp. 2d 1369, 1378 (N.D. Ga. 2007), *aff'd*, 269 F. App'x 888 (11th



WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

Cir. 2008) ("Courts applying Delaware case law have consistently held…that a director is not interested merely by virtue of sitting on an Audit Committee"); *Wood*, 953 A.2d at 142 (audit committee membership *per se* does not disable a director from considering demand).

Plaintiffs argue that the Audit Committee directors failed to discharge their duties and obligations under Coinstar's Audit Committee Charter. ¶¶ 48-49. Plaintiffs, however, fail to mention the Charter's express statements that the Audit Committee's "discussion and review" of press releases, earnings guidance and financial information "may be done generally." Ex. C at § 3(c)(iv) (Coinstar Inc. Audit Committee Charter). Regardless, "director liability is not measured by the aspirational standard established by . . . internal documents." *Citigroup*, 964 A.2d at 135; *Accuray*, 757 F. Supp. 2d at 929 (same); *see also Louisiana Mun. Police Employees Ret. Sys. v. Blankfein*, No. 08-cv-7605 (LBS), 2009 WL 1422868, at *7 (S.D.N.Y. May 19, 2009) (complaint's "lengthy recitation of various Board committee governance principles merely shows that 'there exists a body of rules;"' "service on an oversight committee does not 'change the standard of director liability"' (citations omitted)).

**4. Plaintiffs' Bare Allegations of Insider Stock Sales Do Not Establish a Disqualifying Self-Interest**

Plaintiffs contend that demand should be excused because five of Coinstar's six directors sold Coinstar stock in November 2010. ¶¶ 84-85, 96-97. (Ms. Bevier, Coinstar's Chairwoman, is not alleged to have sold, and Mr. O'Connor was not a director at the time relevant for purposes of any demand futility analysis.) Delaware law, however, generally permits directors to transact in the company's stock "at will, and without any liability to the corporation." *Brophy v. Cities Serv. Co.*, 70 A.2d 5, 8 (Del. Ch. 1949); *see McCall v. Scott*, 239 F.3d 808, 825 (6th Cir. 2001); *In re Sagent Tech., Inc. Deriv. Litig.*, 278 F. Supp. 2d 1079, 1089 (N.D. Cal. 2003). "As a matter of course, corporate insiders sell company stock," and it would be "unwise to formulate a common law rule that makes a director 'interested' whenever a derivative plaintiff cursorily alleges that he made sales of company stock in the market at a time when he possessed material, non-public information." *Guttman*, 823 A.2d at 502. Otherwise, "directors of every Delaware

corporation would be faced with the ever-present specter of suit for breach of their duty of loyalty if they sold stock in the company on whose Board they sit." *Beam ex. rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 833 A.2d 961, 974 (Del. Ch. 2003), *aff'd*, 845 A.2d 1040 (Del. 2004).

For allegations of insider trading to create a reasonable doubt as to a director's disinterestedness, there must be more than cursory allegations. *Guttman*, 823 A.2d at 502. Plaintiffs must show that "each sale by each individual [director] was entered into and completed on the basis of, and because of, adverse material non-public information." *Rattner*, 2003 WL 22284323, at *11; *Guttman*, 823 A.2d at 505 ("Delaware case law makes the same policy judgment as federal law does, which is that insider trading claims depend importantly on proof that the selling defendants acted with scienter."). Thus, plaintiffs must plead specific facts to support the allegations that material non-public information existed; that the accused directors possessed that information; and that those directors were trading because of that information. *Id.* at 503-04. Here, plaintiffs fail to plead a single element of insider trading with sufficient particularity, let alone all three needed to demonstrate a substantial likelihood of liability.

Plaintiffs fail to allege *when* each director supposedly learned of material non-public information, *how* he knew that information, *what* he learned, or *why* the information known was material. *Rattner*, 2003 WL 22284323, at *10, 12 (dismissing complaint that does not allege defendants' "'precise roles'" at the company and "'the information that would have come to their attention in those roles'") (citation omitted). The most plaintiffs can muster is to allege in the most general of terms that "while in possession of adverse, material non-public information regarding Coinstar's business and finances," the directors "sold their personal Coinstar shares" and received "unlawful insider trading proceeds." ¶ 97. This is far from sufficient. *See McCall*, 239 F.3d at 825 (holding demand not excused where "plaintiffs alleged in only a general way that between January 2005 and April 1997, [directors] breached their duty of loyalty by selling millions of dollars of Columbia stock"); *Ferre v. McGrath*, No. 06-cv-1684 CM, 2007 WL 1180650, at *5 (S.D.N.Y. Feb. 16, 2007) ("[T]he mere sale of stock, accompanied by a



WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

conclusory allegation that a director 'knew or was in a position to know' inside information at the time of the sale, is insufficient to create a reasonable doubt as to the director's lack of interest under *Rales*."); *In re Forest Labs., Inc. Deriv. Litig.*, 450 F. Supp. 2d 379, 389 (S.D.N.Y. 2006) (same); *Fink v. Komansky*, No. 03-cv-0388 (GBD), 2004 WL 2813166, at *6 (S.D.N.Y. Dec. 8, 2004) (stock sales did not make directors interested where plaintiff did not specify the adverse, non-public information directors possessed).

Even if plaintiffs pled with particularity that each director possessed material, non-public information when he sold his Coinstar stock, they still would fail to establish a substantial likelihood of liability because they do not plead the requisite causal link between the supposed information and the sales themselves; namely, that the sales were made *because of* the information. *Guttman*, 823 A.2d at 505; *Stepack v. Ross*, No. 7047, 1985 WL 21137, at *5 (Del. Ch. Sept. 5, 1985).

The Complaint also omits essential contextual facts, such as each director's full trading history or their aggregate stock holdings at the time of their stock sales. Without such information, any allegations of the quantity of shares sold are meaningless, and do not imply wrongdoing. *Ferre*, 2007 WL 1180650, at *5; *In re Oracle Corp. Deriv. Litig.*, 867 A.2d 904, 954 (Del. Ch. 2004) (explaining how the context of company president's trading was integral to an insider trading analysis), *aff'd*, 872 A.2d 960 (Del. 2005); *Rattner*, 2003 WL 22284323 at *12; *Guttman*, 823 A.2d at 503.

**B. Plaintiffs Fail to Plead a Sustained or Systematic Failure of Oversight**

Plaintiffs also throw in a boilerplate allegation that the directors "failed to ensure that adequate internal controls were in place." ¶ 98. This failure of oversight, or *Caremark*, claim requires "a showing that the directors breached their duty of loyalty by failing to attend to their duties in good faith," *Guttman*, 823 A.2d at 506, and this "is possibly the most difficult theory in corporate law upon which a plaintiff might hope to win a judgment." *In re Caremark Int'l, Inc. Deriv. Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996). To prevail, plaintiffs must demonstrate that the directors "had clear notice" of improprieties and "simply chose to ignore them or, even worse, to


WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

encourage their continuation." *Guttman*, 823 A.2d at 507. "[O]nly a sustained or systematic failure of the board to exercise oversight…will establish the lack of good faith that is a necessary condition to liability." *Caremark*, 698 A.2d at 971.

The Complaint fails to plead any systematic failure of oversight, let alone with the requisite particularity. Plaintiffs do not specify how Coinstar's oversight mechanisms were inadequate or how the directors purportedly knew of these inadequacies and consciously ignored them. *Citigroup*, 964 A.2d at 130. Rather, plaintiffs rely solely on their oft-repeated (but always unsubstantiated) allegation that the directors must have been aware of the misrepresentations simply *because* they sat on the Board. ¶ 98. This is patently insufficient. *Stiegele ex rel. Viisage Tech., Inc. v. Bailey*, No. 05-10677-MLW, 2007 WL 4197496, at *10 (D. Mass. Aug. 23, 2007) ("it has been repeatedly and rightly held that, 'generalized allegations reflecting poor supervision over financial statements by members of the Audit Committee and other directors [do] not excuse pre-suit demand"') (citation omitted).

### C. Plaintiffs' Scant Allegations of Business and Personal "Entanglements" Do Not Establish a Lack of Independence

Plaintiffs also do not sufficiently allege that the directors lack the necessary independence to consider a demand. Delaware law presumes a director's independence. *Stewart*, 845 A.2d at 1050. To defeat this presumption, a complaint "must create a reasonable doubt that a director is not so 'beholden' to an interested director . . . that his or her 'discretion would be sterilized.'" *Id*. (quoting *Rales*, 634 A.2d at 936). This demanding standard is designed to "deter costly, baseless suits by creating a screening mechanism to eliminate claims where there is only a suspicion expressed solely in conclusory terms." *Stewart*, 845 A.2d at 1050.

***Relationships.*** Plaintiffs allege that the directors "have developed professional relationships with" each other and are "friends" with "entangled financial alliances, interests and dependencies" such that they would never "vigorously prosecute any action" against "their fellow directors." ¶ 90. This bold conclusion has little support in the Complaint. With the exception of their service on Coinstar's Board, the only relationship pled in the Complaint is that



WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

Messrs. Eskenazy and Woodard both sit on the board of MagnaDrive Corporation. ¶¶ 31, 33. This is woefully deficient. *See Highland Legacy Ltd. v. Singer*, No. 1566-N, 2006 WL 741939, at *5 (Del. Ch. Mar. 17, 2006) (allegation that two directors "served together on a few boards of unaffiliated companies" does not show lack of independence); *Langner v. Brown*, 913 F. Supp. 260, 266 (S.D.N.Y. 1996) ("fact that several director defendants sat on the same boards of directors of other companies does not itself establish lack of independence").

Courts have rejected "dependence" claims far more detailed than plaintiffs' allegations here. *See, e.g., Stewart*, 845 A.2d at 1051 (allegations Stewart and other directors "moved in the same social circles, attended the same weddings, developed business relationship before joining the board, and described each other as 'friends,' even when coupled with Stewart's 94% voting power" were insufficient); *Fink v. Weill*, No. 02-cv-10250, 2005 WL 2298224, at *2-3 (S.D.N.Y. Sept. 19, 2005) (same). In claiming a lack of independence by the directors here, plaintiffs must "apparently believe that, in order to maintain independence, only total strangers should be brought onto a corporate board. Again, under such a regime, [one] would be hard-pressed to find any board that meets the requirements to be considered independent." *In re Discovery Labs. Deriv. Litig.*, 242 F.R.D. 333, 337 n.10 (E.D. Pa. 2007).

***Maintaining Positions and Director Compensation.*** Plaintiffs allege that the directors lack independence because they want to "preserve their positions of control" and continue to enjoy the prestige and compensation associated with their service on Coinstar's Board. ¶¶ 30-35 (listing director compensation), ¶ 93. This is insufficient. "Demand futility cannot be pled merely by asserting that the directors acted or would act to preserve their positions." *In re Computer Sciences Corp. Deriv. Litig.*, No. 06-cv-05288, 2007 WL 1321715, at *12 (C.D. Cal. Mar. 26, 2007)*; Sagent*, 278 F. Supp. 2d at 1089 (same). And "Delaware courts have routinely rejected the argument that a director's receipt of compensation alone presents a disabling interest when determining demand futility." *In re Adolor Corp. Deriv. Litig.*, No. 04-cv-3649, 2009 WL 1325738, at *7 (E.D. Pa. May 12, 2009); *White v. Panic*, 793 A.2d 356, 366 (Del. Ch. 2000) (payment of annual board retainer, meeting fees and annual grant of stock options does not make



**WILSON SONSINI GOODRICH & ROSATI**
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

a director beholden to the company's CEO), *aff'd*, 783 A.2d 543 (Del. 2001); *Grobow v. Perot*, 539 A.2d 180, 188 (Del. 1988) (noting that allegations that "directors are paid for their services, . . . without more, do not establish any financial interest"), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000). If these allegations were sufficient, every outside director would lack independence.

***Compensation of Mr. Davis.*** Plaintiffs argue that Coinstar's sole inside director, Mr. Davis, is "interested" because of his "substantial monetary compensation" as Coinstar's CEO and his desire to "preserve and not threaten his position of control and the perquisites thereof." ¶ 100. This does not, by itself, create a reasonable doubt as to a director's disinterest and independence. *See In re NutriSystem, Inc. Deriv. Litig.*, 666 F. Supp. 2d 501, 515 (E.D. Pa. 2009); *Rahbari*, 732 F. Supp. 2d at 387 ("'[m]ere allegations of substantial compensation are insufficient to establish futility' without an allegation of unreasonableness") (internal quotation omitted); *Sagent*, 278 F. Supp. 2d at 1089 (inside directors do not lack independence "solely on their positions and the monetary compensation they receive[ ] in connection with their duties").

### D. Plaintiffs' Remaining Boilerplate Allegations Do Not Demonstrate Demand Futility

***Incapable of Ratification*****.** Plaintiffs posit that demand would be futile because the acts on which they base their Complaint are "incapable of ratification." ¶ 92. Courts have long rejected this allegation because ratification is not the only option to a board under such circumstances; a board may exercise its business judgment not to bring suit. *See, e.g.*, *St. Clair Shores Gen. Employees Ret. Sys. v. Eibeler*, No. 06-cv-688, 2006 WL 2849783, at *5-6 (S.D.N.Y. Oct. 4, 2006) ("even if [the 1934 Act] has been violated, the board might reasonably determine that it is not in the best interests of the corporation to pursue derivative litigation"); *Spiegel v. Buntrock*, No. 8936, 1988 WL 124324, at *4 (Del. Ch. Nov. 17, 1988) ("[i]t is irrelevant, if true, that the facts allege a violation of law" because board can "exercis[e] a judgment not to bring suit"), *aff'd* 571 A.2d 767 (Del. 1990); *Lewis v. Sporck*, 612 F. Supp. 1316, 1322-23 (N.D. Cal. 1985) (claim "that demand is futile because the acts complained of are



WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699

illegal, and, therefore, incapable of ratification misses the point" because "[r]atification is not the only option; the board must be given a fair opportunity to decide whether the corporation itself should bring the suit.").

***Will Not Sue Themselves.*** Similarly unavailing is plaintiffs' argument that demand is futile where the directors would be forced to sue themselves and other individuals with whom they have extensive business and personal entanglements. ¶ 90. "To construe [this kind of allegation] as sufficient would mean that plaintiffs could readily circumvent the demand requirement merely by naming as defendants all members of the derivative corporation's board." *Lewis v. Graves*, 701 F.2d 245, 249 (2d Cir. 1983); *Grimes v. Donald*, 673 A.2d 1207, 1216 n.8 (Del. 1996) (would permit plaintiffs "to subvert the particularity requirements of Rule 23.1 simply by designating all the directors as targets"), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000). Such "bootstrap allegations" should be rejected. *Cray*, 431 F. Supp. 2d at 1122; *Aronson*, 473 A.2d at 818; *Blasband v. Rales*, 971 F.2d 1034, 1039 (3d Cir. 1992).

***Aiding and Abetting.*** Plaintiffs allege that the defendants "aided and abetted and/or assisted each other" or "rendered substantial assistance" in the alleged wrongdoing. ¶¶ 50-51. As a threshold matter, no aiding and abetting claim can lie because plaintiffs have not pled sufficiently an underlying cause of action. *In re Freeport-McMoran Sulphur, Inc., S'holders Litig.*, No. 16729, 2001 WL 50203, at *5 n.29 (Del. Ch. Jan. 11, 2001) ("[A]n underlying breach of fiduciary duty [is] an essential element of a claim for aiding and abetting.").

More important, plaintiffs do not allege a single specific fact about *how* any of the directors "aided and abetted" or "substantially assisted" the other defendants. Plaintiffs do not plead a single particularized fact supporting the notion that the directors knew Coinstar's forecasts were unachievable or that the Company's statements about the 28-day delay were misleading. Indeed, plaintiffs do not plead any facts indicating that the directors were aware of any wrongdoing whatsoever. Plaintiffs' claims are thus clearly insufficient to establish a substantial likelihood of liability. *McGowan v. Ferro*, No. 18672-NC, 2002 WL 77712, at *2

(Del. Ch. Jan. 11, 2002) (dismissing aiding and abetting allegations as "[c]onclusory statements that are 'devoid of factual details to support an allegations of knowing participation'") (citation omitted).

## III. PLAINTIFFS FAIL TO SATISFY THE OWNERSHIP REQUIREMENT UNDER RULE 23.1

Federal Rule of Civil Procedure 23.1 requires a derivative plaintiff to plead that he "was a shareholder . . . at the time of the transaction complained of[.]" This means a derivative plaintiff must be "a shareholder at the time of the alleged wrongful acts" who "retain[s] ownership of the stock for the duration of the lawsuit." *Lewis v. Chiles*, 719 F.2d 1044, 1047 (9th Cir. 1983); *Accuray*, 757 F. Supp. 2d at 925 (same). Failure to satisfy Rule 23.1 requires dismissal of a plaintiff's derivative claims because he lacks standing to pursue them on behalf of the company.

*First*, the Complaint admits that Mr. Brenner does not satisfy Rule 23.1. The Complaint states that Mr. Brenner "has been a shareholder of Coinstar continuously since December 2010." ¶ 28. Since the Complaint alleges misrepresentations as far back as April 2010 (¶ 60), Mr. Brenner did not own Coinstar stock at the time of the alleged wrongful acts. "A derivative plaintiff has no standing to challenge transactions that occurred prior to the time that plaintiff owned company stock." *Accuray*, 757 F. Supp. 2d at 925. Mr. Brenner does not have standing to pursue these derivative claims. His claims must be dismissed.

*Second*, plaintiffs' counsel, not Mr. Brenner or MARTA/ATU Local 732, verified the Complaint. "Although the rules and statutes do not specify who must verify the complaint, the plaintiff, and not counsel, should execute the verification." 13 William Mead Fletcher, *Fletcher Cyclopedia of the Law of Corporations* § 6012 (2011) (footnote omitted); *accord Goldberg v. Meridor*, 81 F.R.D. 105, 110 (S.D.N.Y. 1979). For this reason, the Court should dismiss the Complaint and require plaintiffs, not their counsel, to verify any amended complaint.

## CONCLUSION

Plaintiffs have neither made the required demand on Coinstar's Board nor shown that demand would be futile. Plaintiffs' boilerplate and conclusory allegations do not even remotely connect a majority of Coinstar's Board to the alleged misconduct, let alone show that this majority faces a substantial likelihood of liability. Plaintiffs therefore do not have standing to wrest control of Coinstar's corporate affairs (the decision whether to file a lawsuit) from the Company's duly elected board of directors. The Complaint should be dismissed.

Dated: August 12, 2011

**WILSON SONSINI GOODRICH & ROSATI**


s/Barry M. Kaplan
Barry M. Kaplan, WSBA #8661
Emily S. Schlesinger, WSBA #43661
**WILSON SONSINI GOODRICH & ROSATI**
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Telephone: (206) 883-2500
Fax: (206) 883-2699
Email: bkaplan@wsgr.com
Email: eschlesinger@wsgr.com

Gregory L. Watts, *admitted pro hac vice*
Nicole L. Chessari, *admitted pro hac vice*
**WILSON SONSINI GOODRICH & ROSATI**
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Fax: (650) 565-5100
Email: gwatts@wsgr.com
Email: nchessari@wsgr.com

Attorneys for Defendants Arik A. Ahitov, David M. Eskenazy, Dan O'Connor, Robert D. Sznewajs, Robert B. Woodard, Deborah L. Bevier, Paul D. Davis, Gregg A. Kaplan, Galen Smith, J. Scott Di Valerio, and Nominal Defendant Coinstar

## CERTIFICATE OF SERVICE

I hereby certify that on August 12, 2011, I filed the foregoing with the Clerk of the Court using the CM/ECF system, and served all parties via ECF.

Dated: August 12, 2011

s/Emily S. Schlesinger
Emily S. Schlesinger, WSBA #43661



WILSON SONSINI GOODRICH & ROSATI
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500
Fax: (206) 883-2699